UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| KENDELL SEATON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 5:16-CV-309-REW |
| v. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| SONNY PERDUE, in his official | ) | |
| capacity as Secretary, United States | ) | |
| Department of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

In this ADEA action, Plaintiff Kendell Seaton claims that USDA Rural Development (RD) State Director Tom Fern ignored Plaintiff's superior credentials and picked Barry Turner (12-years Seaton's junior) for the London, Kentucky Area Director position because he wanted a younger man for the job. DE 1 (Complaint). Defendant Sonny Perdue, USDA Secretary, moves for judgment on the pleadings or, alternatively, summary judgment. DE 25 (Motion). The motion is fully briefed, DE 38 (Response), DE 44 (Reply), and stands ripe for review. For the following reasons, and under the applicable standards, the Court finds that Plaintiff marshalled sufficient proof for a triable issue on the ADEA claim. Accordingly, the Court denies summary judgment.

Properly accepting Seaton's substantiated take, there is significant evidence to support a finding of employment mischief. Here, the hiring unit, RD, had selected Plaintiff for the Area Director position but then reversed course when Fern became State Director. In a reeking process that Fern directly oversaw, he repeatedly lied, created

1

dubitable procedural cover, and ultimately selected a significantly younger candidate that once had been tied as the lowest rated qualifying applicant. Although the Court has significant questions about Fern's actual motivations, the ADEA burden-shifting structure and pretext analysis provide a binding formula that here, in the summary judgment context, gets Seaton to a fact-finder.

## I.     BACKGROUND

*Facts*

Judge Hood, who had the case at one point, previously recapped the relevant factual backdrop:

> In 2009, Seaton applied for the Area Director position with [RD's] . . . office in London, Kentucky. [DE 1, p. 5, ¶ 19]. Human Resources Manager Cheri Gaudinier ranked and scored each applicant based on their education and experience, as well as knowledge, skills, and abilities relevant to the position. [*Id.* at p. 5, ¶ 21]. This data was compiled in a Certificate of Eligibles and considered by a selection committee, which consisted of the Agency's State Director, Vernon Brown, as well as Administrative Program Director Tom Kostelnik, Housing Director Linda Chadwell, Business Director Jeff Jones, and Multi-Family Director Paul Higgins. Of the six eligible applicants, Seaton scored and ranked highest on the Certificate.[2] [*Id.*].

>> [FN 2] Seaton's experience includes his tenure as Kentucky State Director for the USDA/FHA from 1981 to 1987. [*Id.* at p. 6, ¶ 21]. He also served as a Business and Industrial Loan Officer, a County Supervisor, and Assistant County Supervisor with the USDA/FDA. [*Id.*]. Seaton has a B.S. in Agriculture from Western Kentucky University, an M.A. in Applied Public Financial Management from American University, and a Teaching Certificate in Vocational Agriculture Education from the University of Kentucky. [*Id.*].

> On September 23, 2009, Brown selected Seaton for the position on the basis of a unanimous recommendation from the committee. [*Id.* at p. 6, ¶ 20]. The following month, Seaton received a letter stating that he had been chosen for the Area Director Position. [*Id.*]. Seaton then completed the appropriate paperwork and submitted to a background check. [*Id.*].

> In November 2009, Tom Fern was appointed as the Kentucky State Director for . . . [RD]. [*Id.* at p. 6, ¶ 23]. The following January, he met with Kostelnik, Agency employee Michele Witt, and Director of Human Resources Allen Hatcher. [*Id.* at

p. 7, ¶ 24]. Based on Witt's and Gaudinier's notes from that meeting, Seaton concludes that its purpose was to find a legitimate business reason for denying him the Area Director position.[4] [*Id.* at p. 7, ¶ 25-27]. Shortly thereafter, Seaton received a letter from Fern notifying him that the position had been cancelled due to a pending reorganization. [*Id.*].

> [FN 4] For example, Gaudinier's notes indicate that an old arrest was "not enough to deny employment" and that this was a "sensitive position/situation." [*Id.* at p. 7, ¶ 26]. Witt's notes state that a "background check-felony conviction" was reviewed. [*Id.* at p. 7, ¶ 27].

Although Fern cancelled five other open jobs at this time, the Area Director position was the only one that had already been filled. [*Id.* at p. 7-8, ¶ 30-31]. Seaton alleges that reorganization "was only a pretext to cover [his] removal … from the job," as Fern evinced an intent to re-announce the Area Director position at the meeting. [*Id.* at p. 8, ¶ 32-34]. On February 14, 2010, Fern, Kostelnik, Gaudinier, and Hatcher held another meeting. [*Id.* at p. 8, ¶ 36]. Notes from the meeting indicate that Seaton "will re-apply for the position & not be selected (results of NACI-doesn't matter)" and that he "would have to argue an EEO basis" to complain about it. [*Id.* at p. 8, ¶ 36-38]. The notes further state that "age disc. = 40 yrs." [*Id.*].

In March 2010, Fern submitted a reorganization plan to the USDA's national office that did not affect the Area Director position in London. [*Id.* at p. 9, ¶ 43]. The Agency re-announced the position one month later. [*Id.* at p. 9, ¶ 44]. Seaton reapplied. [*Id.* at p. 9, ¶ 45]. A younger candidate named Barry Hunter, who had applied for the position in 2009, also resubmitted his application. [*Id.*]. Although Hunter had scored the lowest on the Certificate of Eligibles in 2009, Fern presented Hunter to the selection committee as his choice and asked for the committee's approval, rather than their recommendation. [*Id.* at p. 9, ¶ 46-47]. The committee, comprised of Fern, Kostelnik, Jones, Brown, Witt, Gaudinier, and Agency employee Gene Floyd, approved Hunter for the Area Director position on June 25, 2010. [*Id.* at p. 9, ¶ 48].

DE 15 at 1–4 (footnote 3 omitted).

*Posture*

Seaton, on February 11, 2010, contacted the EEOC and eventually, on April 29, 2010, lodged a formal complaint alleging, among other bases, age discrimination. DE 22-5 at 1; DE 25-3 (Collective Excerpts from Def.'s Investigative File – Part 1) at 33–34. Plaintiff eventually brought his claim to a two-day, August 29 & 30, 2011, hearing before

EEOC administrative law judge (ALJ) Davidson Momah. Judge Momah, though finding "the entire selection process very disturbing," concluded that "the record shows that age was not the real reason . . . for [Seaton's] nonselection." DE 38-5 at 19, 31 (March 28, 2012, decision). The agency adopted the ALJ's recommendation both initially, on October 23, 2013, and after completing its internal appeals procedure, on May 13, 2016. Seaton then filed this suit.[1] DE 1. Judge Hood substituted as Defendant Secretary Perdue for former-Secretary Vilsack and, under Rule 12, dismissed all named individual co-defendants. *See* DE 15 at 1 (Mem. Op. & Order). Secretary Perdue now pursues dispositive relief. DE 25.

## II.      STANDARD[2]

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not

---

[1] No one, certainly no one caring about facts, benefits from an administrative process that separates the hiring decision from Court assessment by almost a decade.

[2] The Court conducts no Rule 12 analysis. The parties repeatedly refer to matters outside the pleadings. The Court, at this late case stage, sees no basis to exclude such references from its review. Plaintiff had, from the alternative presentation, notice that Defendant's motion "might be converted into a motion for summary judgment and [ ] he had a reasonable opportunity to present materials outside the pleadings." *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1105 (6th Cir. 2010). Seaton requests no additional discovery. *Strehlke v. Grosse Pointe Pub. Sch. Sys.*, 654 F. App'x 713, 718 (6th Cir. 2016) ("The nonmovant . . . must inform the court of its need for discovery."). Accordingly, the Court, as it "must" under these circumstances, treats the motion "as one for summary judgment[.]" Fed. R. Civ. P. 12(d).

"weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[3] *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

## III. ANALYSIS

The federal-sector ADEA provision requires that "personnel actions affecting employees or applicants . . . who are at least 40 years of age . . . be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Seaton stakes his discrimination claim on this statute. *See* DE 1 at ¶ 59.

### A. Applicable Standard

"To prevail on a claim under the ADEA, it is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's . . .

_____

[3] Seaton concedes that he is not entitled to a jury trial in this federal sector matter. *See* DE 25-2 at 19. Plaintiff's concession on this point, however, does not alter the Court's role at the Rule 56 stage. *See Pledger v. United States*, 236 F.3d 315, 324 (6th Cir. 2000) (finding no inconsistency in summary judgment and bench trial results and explaining the "substantially differe[nt]" roles). Thus, the Court, at times and consistent with the prevailing summary judgment cases, references a "jury" or "juror" rather than engaging in linguistic gymnastics to repeatedly substitute "factfinder." The Court is (and the parties should be) aware that no jury will be involved and intends such references as simple placeholders for the Court's ultimate role as finder of fact.

language requires that a plaintiff 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision.'" *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009)). The *Gross* Court clarified the ultimate burden for a *private*-sector (§ 623) ADEA plaintiff. Under *Gross*, an ADEA plaintiff cannot "establish discrimination by showing that age was simply a motivating factor." 129 S. Ct. at 2349.

Of course, Seaton brings a federal-sector ADEA claim under § 633a. Though both §§ 623 & 633a forbid age discrimination, Congress used different verbiage to implement each prohibition. *Compare* 29 U.S.C. § 633a(a) (requiring that actions be "free from any discrimination based on age"), *with id.* at § 623 (prohibiting discrimination "because of . . . age"). This language variation led the EEOC and the D.C. Circuit to hold that *Gross* does not mandate a "but-for" test in federal-sector cases. *Ford v. Mabus*, 629 F.3d 198, 205 (D.C. Cir. 2010) ("But the Secretary goes on to argue that *Gross* requires us to hold that section 633a also creates a but-for test. On this point, we disagree."); *Nita H.*, EEOC DOC 0320110050, 2014 WL 3788011, at *10 n.6 (July 16, 2014) ("In the Commission's view, the 'but for' standard . . .  does not apply to retaliation claims by federal sector applicants or employees under . . . the ADEA[.]").

On the other hand, the Ninth and Eleventh Circuits apply *Gross* to § 633a claims. *See Shelley v. Geren*, 666 F.3d 599, 606–07 (9th Cir. 2012); *Babb v. Sec'y, Dep't of Veterans Affairs*, 743 F. App'x 280, 287 (11th Cir. 2018). In light of *Gross*, the Seventh Circuit—and the lone concurrence in the D.C. Circuit's decision—questioned the *Ford* Majority's reading of § 633a. *See Reynolds v. Tangherlini*, 737 F.3d 1093, 1096 (7th Cir.

2013); *Ford*, 629 F.3d at 208 (Henderson, J. concurring) ("Given its flat declaration that the mixed-motives theory 'is never proper in an ADEA case' . . . it is difficult for me to conclude [that] the [Supreme] Court would endorse the reading we announce today."). The First, Second, and Fifth Circuits have discussed the unsettled question without deciding whether the "but-for" test applies to federal-sector claims. *See Palmquist v. Shinseki*, 689 F.3d 66, 76 (1st Cir. 2012); *Leal v. McHugh*, 731 F.3d 405, 411–12 (5th Cir. 2013); *Neary v. Gruenberg*, 730 F. App'x 7, 12 (2d Cir. 2018). The Sixth Circuit has not authoritatively decided this question. *But see Parnell v. Stone*, 12 F.3d 213 (table) (per curiam) (6th Cir. 1993) (applying the "but for" standard to a federal sector ADEA claim).

Neither Seaton nor the Secretary raises the circuit split on this critical issue. Defendant cites Colorado and Michigan district court decisions. DE 25-2 at 29 (quoting *Hartley v. Dep't of Agric.*, No. 10-CV-0323-ZLW-CBS, 2010 WL 5865371, at *3 (D. Colo. Nov. 29, 2010), *report and recommendation adopted*, No. 10-CV-00323-ZLW-CBS, 2011 WL 721861 (D. Colo. Feb. 23, 2011) and *Parnell v. Stone*, 793 F. Supp. 742, 748 (E.D. Mich. 1992), *aff'd*, 12 F.3d 213 (table)). The former applied, with minimal analysis, the "but-for" test to a federal-sector claim; the latter is pre-*Gross & Ford*. Plaintiff's response bears only a single muddled reference, without citation, to the crux of his claim. *See* DE 38 at 19 ("Plaintiff has shown the substantial and motivating factor for Plaintiff's non-selection, the 'but-for' cause, was his age."). Defendant, in reply, relies on the Sixth Circuit's private-sector application of *Gross* in *Blizzard v. Marion Tech. Coll. See* DE 44 at 4 (citing 698 F.3d 275, 283 (6th Cir. 2012)). However, given the current federal context, *Blizzard* is distinguishable, and the subsequent references to pre-*Gross*

"motivating factor" analysis is flummoxing. *See, e.g.*, *id.* at 2 & 8 (quoting *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996)). The Court, though inclined, is unwilling to find Plaintiff conceded this crucial issue based on Defendant's desultory contentions.

Nonetheless, an independent review of the relevant precedent convinces the Court[4] that the "but-for" standard is applicable to Plaintiff's claim. In addition to *Gross* and the contrary circuit holdings discussed above, two cases dissuade the Court from applying *Ford*. First, the Supreme Court's textual interpretation of "based on" directly undercuts the D.C. Circuit's reading of § 633a. *See Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2212 (2007) ("In common talk, the phrase **'based on' indicates a but-for causal relationship** and thus a necessary logical condition." (emphasis added)); 29 U.S.C. § 633a(a) (prohibiting "discrimination **based on** age" (emphasis added)). Second, the Sixth Circuit's discussion of *Gross* in *Lewis v. Humboldt* made clear the Circuit's view on *Gross*'s breadth. 681 F.3d 312, 318 (6th Cir. 2012) (extending *Gross* to ADA claims). As the *Humboldt* Court explained, in 1991 Congress amended Title VII to incorporate a "motivating factor" standard. *Id.* (citing Civil Rights Act of 1991, Pub. L. No. 102–166, § 107, 105 Stat. 1071). The same 1991 Act included ADEA amendments, *see* 105 Stat. 1071 at § 115, but omitted any ADEA equivalent to the "motivating factor" change. Per *Gross*, "[w]hen Congress amends one statutory provision but not another, it is presumed to have acted intentionally[.]" 129 S. Ct. at 2349. The Court simply sees no reasoned basis for limiting the *Gross* rationale to the ADEA's private-sector provisions. The 1991 ADEA amendment *Gross* referenced concerned § 626(e), which governs notice and timely filing. Nonetheless, the *Gross* Court found the contemporaneous amendments

---

[4] For now, at least. In the trial context, the Court would expect thorough advocacy if there is a dispute on the question.

meaningful for another, unamended ADEA provision—namely § 623. The Court finds equal import in Congress's failure to add a "motivating" standard to § 633a, which was added to the ADEA long before the at-issue 1991 amendments. *See* Pub. L. No. 93–259, § 28, 88 Stat. 55.

In sum, the Supreme Court's interpretation of the federal-sector ADEA's "based on" verbiage, though in a different context, is consistent with the private sector "because of" standard. The rationale underlying the *Gross* decision, as elucidated in *Humboldt*, provides no logical basis for limiting the Supreme Court's "flat declaration that the mixed-motives theory 'is never proper in an ADEA case'" to private-sector actions. *Ford*, 628 F.3d at 208 (Henderson, J., concurring) (quoting *Gross*, 129 S. Ct. at 2346). Accordingly, Plaintiff, at trial, would bear the burden of showing that age was the but-for cause of RD's failure to hire him. This standard, of course, logically informs the summary judgment rubric in this ADEA case.

### B. Prima Facie Case

An ADEA plaintiff may establish a prima facie case via either of two evidentiary routes: direct or circumstantial. "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997).

*Direct Evidence*

A plaintiff pursuing the direct track must present evidence that, "if believed, requires the conclusion that age was the 'but for' cause of the employment decision." *Scheick*, 766 F.3d at 530. The evidence must provide this causal link "without requiring

any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Stated otherwise:

> "Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." [*Umani v. Michigan Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011)]. It is "'evidence from the lips of the defendant proclaiming his or her . . . animus.'" *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 526 (6th Cir. 2012) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998)).

*Hannon v. Louisiana-Pac. Corp.*, No. 3:17-CV-00922, 2018 WL 6102940, at *4 (M.D. Tenn. Nov. 21, 2018). Plaintiff does not pursue this path.[5]

### *Circumstantial Proof*

A plaintiff proceeding through the circumstantial prima facie channel must satisfy "the familiar *McDonnell Douglas* burden-shifting framework." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 589–90 (6th Cir. 2014). Under this rubric, Seaton had to initially establish that: "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected." *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001).[6] The

---

[5] The Court arrives at this conclusion by dint of Plaintiff's failure to address any of the relevant factors for alleged discriminatory remarks. *See Diebel v. L & H Res., LLC*, 492 F. App'x 523, 527 (6th Cir. 2012) ("In age-discrimination cases, allegedly discriminatory remarks are evaluated by considering four factors[.]"). In any event, the alleged Kostelnik remarks and Guadinier note would require, at least, *some* deductive efforts to arrive at the relevant discriminatory sequitur. This is sufficient to take such proof outside the direct evidence analysis.

[6] Stated otherwise:

> To establish a prima facie case of age discrimination, a plaintiff must show: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002). An allegation that the plaintiff was replaced by a younger

undisputed facts show that Seaton: (1) was over 60 years old during the relevant period, DE 38 at ¶ 10, (2) applied and was rejected for an RD position, DE 25-1 at ¶ 49, and (3) that he was, as RD itself twice found, qualified for the position, *id.* at ¶ 19.

Defendant disputes the final element but misperceives Seaton's prima facie burden. *See, e.g.*, DE 44 at 4. RD argues that Seaton's failure "to identify a similarly situated employee outside his protected class that was treated differently than him" is fatal. DE 44 at 4. Not so, for at least two reasons. First, relative age, rather than class membership, is the relevant comparative criterion for Seaton and Turner. *O'Connor v. Consol. Coin Caterers Corp.*, 116 S. Ct. 1307, 1310 (1996) ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). The fact that Turner was also over 40, and thus within the § 633a class,

---

individual supports an inference of discrimination only if the difference in age is significant.

*Blizzard*, 698 F.3d at 283. Given this formulation, the Court declines the Secretary's invitation to treat the vacancy cancellation and Mr. Turner's selection as distinct alleged acts of discrimination. The vacancy cancellation, standing alone, would leave the fourth prima facie element unfulfilled. After all, if the position were never reannounced or never filled, Seaton's claim would, at best, fall under the modified "reduction in force" approach. *See Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 456–57 (6th Cir. 2007) ("[W]here an employee's position is eliminated pursuant to a reduction in force ('RIF') or reorganization, the analysis with regard to the fourth element differs because the employee is not replaced."); *see also Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) ("[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."). But here, Seaton advances no RIF theory. Rather, it is the full course of conduct—the announcement, cancellation, reannouncement, and ultimate selection of Mr. Turner—that comprises Seaton's claim and that the Court, for current purposes, evaluates. It would ignore Seaton's true claim—and the record—to dissect the connected sequence in the way RD argues.

is irrelevant to the prima facie analysis. *See id.* ("Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case."); *see also Moffat v. Wal-Mart Stores, Inc.*, 624 F. App'x 341, 346 n.5 (6th Cir. 2015) ("An ADEA plaintiff need not show that she was treated less favorably than someone outside the protected class.").[7]

Further, disparate treatment proof—though an available alternative basis for satisfying the fourth element, *see Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007)—is not mandatory. "[T]he requirement that a plaintiff establish a prima facie case of age discrimination is not intended to be an onerous one." *Loyd*, 766 F.3d at 590. Seaton, to complete his prima facie case, needed only to show that Turner was "substantially younger[.]" *Burzynski*, 264 F.3d at 622. Here, the uncontested 12-year age gap suffices. DE 38 at 5; DE 25-1 at ¶ 42; *Grosjean*, 349 F.3d at 336 ("Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of age discrimination prima facie case.") (collecting cases).

### C. Nondiscriminatory Basis

Because Seaton presents a prima facie case, "the burden . . . shifts to [Defendant] to articulate a legitimate nondiscriminatory reason for the adverse employment action." *Schoonmaker v. Spartan Graphics Leasing*, LLC, 595 F.3d 261, 264 (6th Cir. 2010).

---

[7] *But see Smith v. Wrigley Mfg. Co., LLC*, No. 18-5397, 2018 WL 5096379, at *2 (6th Cir. Oct. 18, 2018) ("(4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals." (quoting *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 463 (6th Cir. 2015)). The Court relies on *O'Connor* and the Sixth Circuit's published decision in *Grosjean v. First Energy Corp.* in rejecting the "protected class" enumeration of the fourth element. 349 F.3d 332, 335 (6th Cir. 2003) ("In age discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person.").

"[T]his burden is one of production only, not of persuasion." *Gray v. Toshiba Am. Consumer Prod., Inc.*, 263 F.3d 595, 599 (6th Cir. 2001). Here, Defendant offers several ostensibly legitimate bases for Fern's choice of Turner over Seaton. Fern contends he gave Turner the nod based on his more recent (and London-based) experience, his close ties to the relevant stakeholders, and the positive reviews Turner received from coworkers and community members. DE 25-3 at 8–9 (Fern EEOC hearing testimony). Fern also explained *why* he felt these factors were meaningful. *See id.* at 9–10 ("The area director is . . . personally working hands on supervising those staff . . . . He's the leader . . . . with all the stakeholders[.] . . . . [Turner] knew the people. . . . [H]e had a proven track record of working well with all the partners and stakeholders as well as his coworkers."). Fern contrasted Turner's credentials with Seaton being away from agency work for "approximately 22 to 23" years during which "the face of Rural Development has changed dramatically[.]" *Id.* at 10. He further noted that Seaton's work history never placed him in the London area. *Id.* at 11.

The Court views Defendant's proffered selection rationale as sufficient to carry the "extremely light" step two production burden. *Baseball at Trotwood, LLC v. Dayton Prof'l Baseball Club, LLC*, 204 F. App'x 528, 536 (6th Cir. 2006). "It is important to note that the defendant need not *prove* a nondiscriminatory reason for not [hiring Seaton], but need merely *articulate* a valid rationale." *Hartsel*, 87 F.3d at 800 (emphasis in original). To the extent Plaintiff argues that experience recency intrinsically is an illegitimate basis or a mere proxy for ageism, he is incorrect. *See Wooden v. Bd. of Educ. of Jefferson Cty., Ky.*, 931 F.2d 376, 379–80 (6th Cir. 1991) (affirming summary judgment over plaintiff's objection to defendant's "giv[ing] more recent experience greater value"); *Killian v.*

*Hagel*, No. 12-CV-0828 JLS (DHB), 2015 WL 13239134, at *4 (S.D. Cal. July 27, 2015) ("Plaintiff's lack of recent experience provided Defendant with a legitimate non-discriminatory reason for declining to interview and hire Plaintiff."), *aff'd sub nom.* *Killian v. Carter*, 672 F. App'x 677 (9th Cir. 2016). Plaintiff's counsel, in closing argument at the EEOC hearing, provided an interpretation of the alleged "20 years out of date" remark that is consistent with the Court's view, *i.e.*, that criticism of remote experience is just that. DE 38-4 (EEOC Hr'g Tr. – Vol. 2) at 57 ("[B]asically it meant that Mr. Seaton's . . . experiences . . . w[ere] too far in the past."). Put simply, age and age of experience, though often correlated, are hardly synonymous.[8] If Fern chose Turner because he honestly believed Seaton's experience "was too far in the past[,]" then Seaton's claim fails. *Browning v. Dep't of Army*, 436 F.3d 692, 696 (6th Cir. 2006) ("[E]mployment-discrimination laws do not diminish lawful traditional management prerogatives in choosing among qualified candidates, and an employer has great flexibility in choosing a management-level employee." (internal citations and quotation marks omitted)).

The cancellation explanation is also grounded in record evidence. *See, e.g.*, DE 38-3 (EEOC Hr'g Tr. – Vol. 1) at 6; *id.* at 83 ("[A]t one point we were" not even going to "have the London area office."); *id.* at 113; DE 25-4 at 7 (Collective Excerpts from Def.'s Investigative File – Part 2). Indeed, some proof shows that the national RD office initially spurred the reorganization efforts. DE 22-2 at 1 (Sherie Hinton Henry Letter to all State Directors suggesting study of "Reorganizations in the Field."). Precedent supports

---

[8] For example, a 38-year old individual (not protected by the ADEA) could have lifeguarding experience "20 years out of date." On the flipside, Mr. Brown's experience from his 40+ continuous years at the USDA (DE 38-3 at 65) was, as of the EEOC hearing, current despite falling within the ADEA's protective ambit.

reorganization as a valid explanation for adverse action at *McDonnell Douglas* step two. *Cf. Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 492 (6th Cir. 2012) ("Evidence of an employer's business restructuring, which may include the elimination of jobs or termination of otherwise competent employees . . . satisfies the employer's burden of producing a legitimate, non-discriminatory reason for a plaintiff's termination."). RD offers documentation of deliberate steps in consideration of the state structure under Fern's leadership. Those papered steps—which involved many players from local, to area, to state, to DC—articulate a rational basis for the sequence of and decision behind cancellation.

In sum, Defendant's stated grounds are legitimate, "clear[,] reasonably specific[,]" and they afford Seaton "a full and fair opportunity to demonstrate pretext." *Texas Dep't of Cmty. Affairs v. Burdine*, 101 S. Ct. 1089, 1096 (1981) (internal quotation marks omitted). The cases require no more.

### D. Pretext[9]

Because Defendant presents legitimate bases for its hiring decision, the burden returns to Seaton. Plaintiff must offer evidence to show that the offered reasons were, in fact, "a pretext designed to conceal unlawful discrimination." *Loyd*, 766 F.3d at 590–91. However, Plaintiff's burden at this stage is not merely to produce evidence capable of persuading a factfinder to reject the Defendant's explanation. Rather, Plaintiff must provide proof sufficient to convince a reasonable finder of fact that if not for Seaton's age, Fern would have chosen him over Turner. *See St. Mary's Honor Ctr. v. Hicks*, 113 S.

---

[9] A pretext is "something that is put forward to conceal a true purpose or object." *Pretext*, *Webster's Unabridged Dictionary* (2001 ed.). It involves or features a "misleading appearance or behavior." *Id.*

Ct. 2742, 2754 (1993) ("It is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." (emphasis in original)). There are three recognized paths for a plaintiff claiming pretext. Seaton must offer proof that "(1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd*, 766 F.3d at 590 (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)).

Plaintiff does not fully dispute the factual veracity of Defendant's proffered explanation, *i.e.*, that Turner had more recent experience and closer ties to the London Area [or that Fern actually submitted a partial reorganization plan, *see* DE 25-4 (memorandum requesting reorganization approval)]. Nor does Plaintiff offer a theory under the third approach, which typically requires a comparative analysis between a plaintiff and an otherwise similarly situated individual outside the protected class. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) ("The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.") (overruled on other grounds by *Gross*, 129 S. Ct. 2343). Plaintiff identifies no younger individuals that RD hired in the absence of community ties or recent experience [or younger selectees whose vacancies were not cancelled]. Not every pretext avenue pertains in every case.

Instead, Plaintiff here proceeds down the second track. To survive summary judgment on this theory, Seaton must "demonstrate that a reasonable jury could find that

'the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup,' and did not actually motivate its action." *McDaniels v. Plymouth-Canton Cmty. Sch.*, No. 17-2412, 2018 WL 5734695, at *8 (6th Cir. Nov. 1, 2018) (quoting *Manzer*, 29 F.3d at 1084) (Title VII). The Court sees three categories of evidence relevant to this question.

*Vacancy Cancellation*

There is strong proof that sincere reorganization considerations did not actually motivate Fern's decision to cancel the **London** vacancy. Initially, the Court notes that the reorganization efforts never ultimately impacted the London office and that RD reannounced the vacancy less than three months after the cancellation. DE 25-4 at 19 (January 15, 2010, cancellation letter); DE 25-5 at 32 (April 5, 2010, reannouncement). This is far from determinative as to Fern's original motives, but—just as a closure of the London office would logically suggest sincere consideration—failure to act cuts in Plaintiff's favor. The record also includes statements from multiple current and former high-level employees that suggest moving the London office to Somerset was never a viable option. DE 22 at 96 (Former State Director Seaton); DE 38-3 at 92 (Former State Director Slone); *id.* at 66–67 (Former Acting State Director Brown); *id.* at 145 (Administrative Program Director Kostelnik).[10] Again, this does not mean that Fern *could*

---

[10] The defense characterizes the Slone and Seaton claims regarding reorganization legitimacy as "bald assertions and conclusory statements[.]" *See* DE 44 at 7 (quoting *Hartsel*, 87 F.3d at 801). The Court disagrees. Seaton, as deponent, detailed the basis for his opinion that the reorganization, at least affecting London, was a sham. *See* DE 22 (Seaton Dep.) at 96 ("[T]he flow of people and the way the roads are, the network, how people are served that come in from the mountains to London, and just move them over and they got to go around the lake to get to -- over to Somerset, it made no sense."). Slone, a 33-year RD veteran (DE 38-3 at 87), also explained his (less strenuous) criticism: "Moving the London office to Somerset, considering how far the London office

not have believed otherwise, but a factfinder could logically infer that Fern *did* not honestly assess moving the London office based on such claims.

Fern's testimony regarding acting director Brown's decision to fill a Madisonville, Kentucky, management vacancy further suggests a non-reorganization motive for the Seaton cancellation. Brown had filled the spot just before Fern arrived. Fern, as to the Madisonville selection, stated that he "felt it should not have been done" because "usually with respect and courtesy [the selecting official] will hold [management] positions . . . knowing that a new state director is going to be appointed." DE 38-4 at 5; *see also id.* at 35 (testifying to relating similar concerns to Hatcher). A factfinder could reasonably infer that Fern's decision to cancel the vacancy was motivated by a desire to interdict a similar perceived slight in the form of Brown's Seaton selection. Of course, such a motive is not, under the ADEA, improper, but the inconsistency with Fern's claimed reliance on purely reorganizational concerns is a pretext factor.

More importantly, however, are Cheri Guadinier's notes from a January 2010,[11] pre-cancellation meeting attended by Allen Hatcher, Tom Fern, Tom Kostelnik, and Michele Witt. *See* DE 23 (Guadinier Dep.) at 63. The relevant notes state: "Cancel them all at same time. Keep the position where it is. We are going to reannounce. . . . Document on . . . restructur[ing]." *Id.*at 69; DE 23-6 at 1. The use of "reannounce" alongside the status quo reference is telling. A reasonable and indeed obvious inference

---

serves up into eastern Kentucky wouldn't be conducive to travel patterns[.]" *Id.* at 92. Further, the underpinnings of the Slone and Seaton opinions are consistent with Kostelnik's view. *See id.*at 145 ("Is it your belief that shutting down . . . the London office was ever a viable option . . . ? . . . . You know, we needed an office in that area.").

[11] Approximately January 14, 2010. DE 23 at 59.

from this notation is that **prior to the cancellation** the reorganization initiators knew that any restructuring plan would not impact or displace the London area director position. Bearing this in mind, the Court sees a genuine dispute regarding Fern's motives for (and truthfulness in) cancelling the Seaton vacancy.

It is interesting to the Court that Fern and his group spent significant time on a cancellation-purposed call discussing Seaton as an individual candidate. The January 14 call notes from Witt (DE 27-1) and Guadinier (DE 23-6 at 1) both show this. If the cancellation decision did not personally target Seaton, why did the call involve detailed discussion of Seaton's "suitability issues," or his prior criminal record? In other words, if Fern acted only from a genuine and neutral desire to consider reorganization, he would have had no reason to explore a particular justification for not hiring Seaton at the time. Such imponderables signal pretext.

Undoubtedly, and as discussed above, there is significant countervailing proof indicating the London office closure was a sincere consideration. *See* DE 25-2 at 14–15. Yet, the discrimination case law certainly anticipates the possibility that facially valid explanations for an adverse act can coexist with improper motives. *Cf. Jones v. Potter*, 488 F.3d 397, 408-09 (6th Cir. 2007) (labeling as "the very definition of pretext" a plan by an employer to "wait[] for a legal, legitimate reason to fortuitously materialize, and then use[] it to cover up [the] true, longstanding motivations for firing the employee"). The Court sees sufficient record proof for a factfinder to believe either Defendant's earnest belief or Seaton's subterfuge narrative.

If Plaintiff's burden here were only to establish a triable question on whether the London-centric reorganization motives were legitimate, Seaton would prevail. Yet, as the

Court previously explained, the vacancy cancellation is not, under the theory Plaintiff advances, an independently actionable event. Rather, Seaton also needed to cast doubt on Fern's motives in, months later, selecting Turner. That said, the proof suggesting ulterior cancellation motives carries consequential weight for the later decision. Generally, a factfinder believing that Fern was dishonest about the restructuring would have reason to doubt his overall credibility. Specifically, a factfinder concluding that Fern disingenuously pointed to reorganization to justify the cancellation might further infer that Fern's reliance on the Turner-favorable factors was simply another convenient but false excuse.

The Court also must comment on Fern's arguable dissembling with Seaton himself. Per Plaintiff, as he began to develop insecurity and heard that Fern might be meddling with the selection, Seaton went to meet with Fern. In this awkward exchange, weeks before cancellation, Fern tried to avoid the topic and basically indicated that Seaton was in the midst of the process and that Fern would have no role in hiring completion: "And he basically told me that he was not going to get involved in the process, that I was already involved in getting it processed, and that personnel had already started dealing with me. . . and for me to work with them, but he was not going to get involved in the process." DE 22 at 59–60. Given what actually was happening—Fern had seized on the reorganization, initiated cancellation of the selection, and indeed ultimately was the selector on Turner—this exchange, if true, would be the boldest of deceit by the subject decisionmaker.

In sum, the vacancy-related proof provides a strong foundation for Seaton's pretext case.

Next, Cheri Guadinier's February 12, 2010, teleconference notes include a critical indication of prejudgment regarding Seaton's candidacy. During the call, either Fern, Kostelnik, or Hatcher, DE 23 at 82, stated (as a fair inference) that Seaton would "re-apply for the position [and] not [be] selected[.]" DE 23-6 at 7. This statement presentsfertile ground for Plaintiff-favorable inferences.

First, the implicit suggestion—post-cancellation, but amidst "analysis of the reorganization plan" (DE 23-6 at 7)—that the same position was going to be reposted (this, of course, from a natural reading of *re*-apply) adds to doubts about the proffered cancellation motive. Second, the conference, mid-process, provides a temporal guidepost connecting the cancellation and ultimate selection. That is, a factfinder with doubts about the Turner-pick explanation springing from the cancellation could find confirmation in this additional link in the Plaintiff's narrative chain. Third, the statement independently (and reasonably) sheds dubious light on Fern's explanation for his final selection.

Fern testified at length about how he evaluated Seaton *in comparison to* Turner. DE 38-4 at 13–24.[12] He further claimed to have considered Seaton's application as selecting official and, indeed, convened a committee specifically for that purpose. *Id.* at 42–43. Yet, despite testifying that June 2010 was the "first time [he] had occasion to compare Mr. Seaton directly to Mr. Turner[,]" the Guadinier notes suggest that such comparison was, at best, a nullity and, perhaps, a total ruse. DE 38-3 at 153–54. Ms. Witt, RD's Civil Rights Manager, testified that the statement reflected in Guadinier's notes

---

[12] The Court's role at this stage does not include credibility determinations. Nonetheless, ALJ Momah's comments during this portion of Fern's testimony are, in the Court's view, noteworthy. *See* DE 25-3 at 16 ("[T]here's certain things that you're saying that makes my skin crawl.").

would have raised "red flags" to her. *See* DE 27 (Witt Dep.) at 55. A factfinder could certainly react similarly.

Undoubtedly, these post-cancellation notes could mean different things. But one plausible view is that the team on the call knew Seaton would reapply, knew Seaton would not be selected, and knew Seaton would "argue an EEO basis" for the non-selection. *See* DE 23-6 at 7; DE 38-3 at 106 (Guadinier confirming that her notes indicate "they're not going to select" Seaton if he reapplied). Maybe Nostradamus was also on the call, because all of this ultimately came to pass.[13] And, if Fern (the decider), who already had pulled the job from Seaton, knew he would never select Seaton, his lofty comparisons of Seaton and Turner were just window dressing.

Additionally, the February 12 notes reflect a Fern inquiry regarding recusal and/or delegating the selection process. Hatcher advised that it could be done but it would be "irregular[.]" DE 23-6 at 7. Typically, idiosyncrasies in the selection process are a plaintiff-favorable factor in the pretext analysis. *Jenkins v. Nashville Pub. Radio*, 106 F. App'x 991, 995 (6th Cir. 2004) (holding that the plaintiff had raised a triable issue as to pretext based, in part, on "evidence of irregularities in the application and selection process"). Here, Fern did not ultimately recuse himself or delegate the selection decision. Nonetheless, a factfinder could reasonably infer that Fern, by raising the possibility, believed there were legitimate reasons to question his impartiality.

---

[13] On the other hand, despite a Guadinier note regarding an apparent instruction to "notify [ ] Seaton when . . . we are readvertising this position[,]" DE 23-6 at 7, Seaton evidently was never told about the reposting. *See* DE 22-6 (Seaton Aff.) at 3. This is consistent with Guadinier's prior notation to "say as little as possible[.]" This proof further signals the rank atmosphere of the selection process.

Thus, Seaton offers grounds for a factfinder to doubt Fern's motives at cancellation, on January 15, and to suspect pre-selection, on February 12.

*Credentials & Prior Selection*

The parties hotly contest Turner and Seaton's relative qualifications. The defense, quoting the D.C. Circuit, argues that "[i]n order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination." DE 25-2 at 21 (quoting *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007)). However, the Sixth Circuit "has never adopted the . . . requirement that in order to raise a genuine issue as to whether the plaintiff was rejected because of an improper motive rather than because of the exercise of discretionary business judgment, the plaintiff must demonstrate qualifications that are 'vastly-or even clearly' greater than those of the successful applicant." *Jenkins*, 106 F. App'x at 994.

The Court, for present purposes, finds the following credential proof relevant:

1. Fern himself testified that Seaton's educational experience was clearly superior to Turner's. DE 38-4 at 30.

2. Seaton previously served as state director of RD's predecessor agency (FHA) from 1981-1987,[14] and as an FHA tri-county supervisor from 1973-1975. DE 25-1 at ¶ 4; DE 23-2 at 1.

3. Turner had never served (in a non-acting capacity) in a managerial position broader than the county level. *See* DE 25-4 at 30. [Former State Director Slone testified that supervisory experience is "70 percent of what" an Area Director does and "the number one criteria." DE 28-3 at 88, 90.]

4. RD personnel, scoring both applicants (along with several others) using objective criteria, ranked Seaton (tied for) first first and Turner (tied for) last. DE 44-1 at 1.

_____

[14] Neither party materially addresses any proposed impact of Seaton's ignominious departure from this role. *But see* DE 25-1 at ¶¶ 5–7. Thus, the Court, consistently, omits any substantive consideration of these events.

5. The prior selection committee, evaluating Seaton and Turner on the same certificate of eligibles, unanimously found Seaton most qualified and recommended Brown pick him. DE 38-3 at 68–69.

On the whole, the Court sees objective, non-recency/locality factors favoring Seaton.[15] The gap is not enormous and Brown, the original selecting official, acknowledged that reasonable minds could differ regarding his choice of Seaton. DE 38-3 at 69. But Plaintiff need not prove he was overwhelmingly more qualified to garner relevant factfinder attention to a qualification disparity. A higher rating on objective criteria, a unanimous committee naming him most qualified from a list that included the ultimate selectee, the Fern-acknowledged gap in education, and the relative disparity in high-level management experience combine to offer a potential springboard for a pretext inference. *See Burdine*, 101 S. Ct. at 1097 ("The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.").[16] Indeed, a factfinder inclined to believe that Fern relied on a convenient excuse (reorganization) to cover his real motives for the cancellation might also conclude that Fern ignored the areas of Seaton's superior qualifications and simply pointed to other narrower grounds where Plaintiff was fortuitously deficient. In short,

---

[15] The Court also notes that Fern, prior to his appointment, had not worked at RD for approximately eight years. DE 38-4 at 4. The age of Fern's experience, though distinguishable, offers a measure of additional doubt for his principal critique of Seaton's resume.

[16] This is not to say that there is reason to doubt the objective legitimacy of a preference for more recent experience focused in a relevant locale. The Court, at step two of *McDonnell-Douglas*, already determined that *actual* reliance on such criteria would be legitimate. Criticism of dated experience simply is not code for ageism.

there is ample record evidence from which a factfinder could reasonably reject Fern's stated rationale for tapping Turner over Seaton.[17]

### E.  Ultimate Burden

Nonetheless, a factfinder might wonder, based on the proof discussed above: "Isn't this an **age** discrimination case?" It is true that, beyond the prima facie case, the record analyzed thus far includes little to point the finger at an ageist motive. Further, "[t]he isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination." *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 267 (6th Cir. 1986).

However, Seaton's prima facie case does not stand alone. Again, the record includes numerous circumstantial bases for doubting Fern's side of the story. Precedent makes clear that proof sufficient for "rejection of the [employer's] proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination[.]" *St. Mary's Honor Center*, 113 S. Ct. at 2749. A plaintiff who, like Seaton, comes forward with a prima facie case and good reasons to reject an employer's narrative is not *"required"* to present additional proof. *Id.* Yet, the cases also recognize the possibility that "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational

---

[17] The Court would add here that when Fern first selected Turner, he did so without Seaton even appearing as an eligible. DE 38-3 at 134 (Kostelnick EEOC testimony). Through some record snafu, RD's personnel clearinghouse had not included Seaton as a qualified eligible. *Id.* Fern, though knowing Seaton's prior interest and selection, forged on to select Turner. RD became aware of the problem and sent a revised list. DE 38-3 at 135. Fern then used a concurrence committee for up or down advice on the Turner choice. *See* DE 23 at 98. He viewed this as fair consideration of Seaton, although he repeatedly conceded he had "already" decided on or selected Turner. DE 38-3 at 153; DE 38-4 at 12, 42.

factfinder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2109 (2000); *see also St. Mary's Honor Ctr.*, 113 S. Ct. at 2754 ("It is not enough . . . to *dis* believe the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." (emphasis in original)).

The Court has wrestled with the pretext-only line in this Circuit. Cases like *Carter v. Toyota Tsusho Am., Inc.*, 529 F. App'x 601, 608 (6th Cir. 2013), directly caution district courts against requiring heightened proof in the summary judgment context. In *Carter*, the Court reversed a summary judgment decision straying too far from a pretext-only spot. "Thus, to the extent prior case law suggests that to survive summary judgment a plaintiff must do more than sufficiently call into question the employer's proffered reasons for its employment decision, . . . it is no longer the law of this circuit in light of *Reeves*." *Id.* at 610; *see also id.* ("Evidence that the employer's proffered reason for the termination was not the actual reason thus does not mandate a finding for the employee . . . but it is enough to survive summary judgment[.]" (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 594 (6th Cir. 2012)).

Despite that, the Sixth Circuit persists in flagging the exception framed by *Reeves*, sort of a "usually, but" concept:

> Certainly, there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment . . . if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Alberty v. Columbus Twp.*, 730 F. App'x 352, 359 (6th Cir. 2018) (quoting *Reeves*, 120 S. Ct. at 2109). Is this an instance where the normal formula yields to the "exception to the general rule in *Reeves*[?]" *Id.*

For several reasons, and drawing from *Alberty*, the Court says no. First, the pretext proof is not weak. Fern, it appears, had a strong negative reaction to Seaton as the choice. He orchestrated the de-selection for a position he knew would still need a candidate. He may have pre-decided that Seaton would not get the re-announced slot. Fern arguably lied to Seaton about his involvement in the process. There is strong reason to doubt the veracity of Fern's narrative about the whole affair. Thus, this is not a case featuring a "weak issue of fact" regarding employer truthfulness. *Alberty*, 730 F. App'x at 360. Also, there is no conclusive proof of a nondiscriminatory reason[18] or uncontroverted, independent evidence "that no discrimination had occurred." *Id.* The proof, indeed, is not conclusive or uncontroverted as to any specific animus or reasoning.

The lynchpin for Seaton comes from Michele Witt's January 14, 2010, meeting notes. From this pre-cancellation teleconference involving Hatcher, Fern, Kostelnik, and Guadinier, Witt recorded: "Age Disc. = 40 yrs." DE 27-1. Though this note is, in some ways, "[i]solated[,]" Witt's testimony regarding its creation removes it from the category of "ambiguous comments [ ] too abstract . . . to support a finding of discrimination."

_____

[18] Certainly, Seaton repeatedly carping about a political reason for Fern's choices cuts against an age basis. *See, e.g.*, DE 38-3 at 34 ("I think it's politics."); *id.* at 36 ("[T]he reason . . . why Mr. Fern did not select me is because he had decided that he didn't want a Republican person working for him[.]"); *see also Hartsel*, 87 F.3d at 800 ("[M]uch of the evidence most damaging to Hartsel's allegations comes from her own testimony."); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) ("If a plaintiff shoots himself in the foot, surely there is no point in sending the case to the jury."). However, Fern denied any political motive, DE 25-4 at 4 (Fern Aff.), and Seaton has phrased the decisional motivations as alternative throughout. *See, e.g.*, DE 22-5 (Seaton EEOC Compl.).

*Berry v. Frank's Auto Body Carstar, Inc.*, 495 F. App'x 623, 626–27 (6th Cir. 2012) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998) (internal modifications omitted)). When asked, at the EEOC hearing, if this note indicated that part of the meeting discussion concerned whether there was "a potential age discrimination issue[,]" Witt testified: "Apparently so or I wouldn't have written that, because that's just my mental note of what age discrimination equals." DE 38-3 at 76; *see also id.* at 80 ("[I]f I wrote that down, obviously someone just mentioned age discrimination[.]"). This mid-process conversation tinges the proof and renders it reasonably conducive to an ageist inference. Adding, to the prima facie case and pretext evidence, the sworn age discrimination allegations of Plaintiff[19] and Former State Director Slone and the sum, in the Court's calculus, is a genuine dispute of material fact. DE 38-6 & 38-7.

The defense, unsurprisingly, advances a benign explanation for the Witt note. *See* DE 44 at 8 ("The single notation that mentions age is simply a basic statement of law[.]"); *cf. id.* at 5 (calling the note "ambiguous"). Further, many of the individuals involved with the relevant meeting explicitly disavow any improper discussions. However, the Court's Rule 56 role mandates (where reasonable) Plaintiff-favorable, not Defendant-proposed inferences. A factfinder, on this record, could reasonably reach

---

[19] The Court notes also Kostelnik's attributed remarks. Kostelnik was the administrative program director and was working closely with Fern on re-doing the selection. He had a handle on Fern's views, DE 38-3 at 138 ("Mr. Fern . . . felt that . . . recentness of experience was an important characteristic[.]"), and allegedly relayed directly to Seaton that he was "out of touch" and "out of date[.]" DE 22 at 75 (Seaton attributing such remarks to Kostelnik). This may simply be a reference to recent experience, but putting it in the hopper with all other proof, a factfinder could view such talk as prompting the age discrimination discussion referenced in the Witt notes. Maybe RD was properly walking a civil rights line, or maybe Fern's assessment of Seaton has a more pernicious tone. This will be for the factfinder.

multiple conclusions: it could believe the Defendant's explanation, it could credit Seaton's version, or it could—as did ALJ Momah—favor a middle, non-ageist, path. In the federal courts, however, a choice between reasonable inferences is one for a factfinder at trial.

The record here flows through the procedural mechanics of the ADEA. The result is a narrow set of animus questions to be answered by the finder of fact. Getting to trial is a far cry from prevailing at trial, but the Court must hew to the standards and allow Seaton his day.

## F. Lingering Issues

Finally, the Court takes up several unresolved defense contentions. Defendant, with its initial memorandum (DE 25-2 at 28) and in reply (DE 44 at 13), remarks on the fact that Fern is actually older than Seaton. The defense appears to invite the Court's invocation of a "same-group" inference, *i.e.*, "the idea that one member of a group is unlikely to discriminate against another member of the same group." *Wexler*, 317 F.3d at 574. However, under the Rule 56 rubric, it would be error for the Court to accept Defendant's invitation. *See id.* ("[T]he district court erred when it invoked the same-group inference at the summary judgment stage.").

Additionally, RD devoted portions of briefing to the so-called, "honest belief" doctrine. DE 25-2 at 13–14; DE 44 at 6–8. However, this rule only "come[s] into play" if, "under the first approach to establishing pretext, the plaintiff demonstrates that the non-discriminatory reason given by the defendant . . . has no basis in fact[.]" *McDaniels*, 2018 WL 5734695, at *8. Here, as discussed previously, Seaton does not dispute that he lacked London-based, recent RD experience or contend that no reorganization study occurred.

Rather, Plaintiff contends that the "reorganization study" and proffered hiring rationale were a "sham[.]" *E.g.*, DE 38-7 at ¶ 18. Because Plaintiff pursues the second, "did not actually motivate" path, the "honest belief rule is . . . inapplicable[.]" *McDaniels*, 2018 WL 5734695, at *8.

Plaintiff concedes that Defendant is entitled to summary judgment on his jury trial and attorney fee (DE 1 at 11) claims. *See* DE 38 at 19 & 20; *see also Lehman v. Nakshian*, 101 S. Ct. 2698, 2701 (1981) ("It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government."); *Boehms v. Crowell*, 139 F.3d 452, 462 (5th Cir. 1998) ("We now hold that ADEA subsection 633a(c) may not be used to award attorney's fees against the federal government."). Seaton also waived opposition to Defendant's request for dismissal of the cost claim. *Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) ("Thus, where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived.") Further, to the extent Plaintiff's request for "other relief" (DE 1 at 11) was intended to include a compensatory damage request, the ADEA does not authorize such recovery. *C.I.R. v. Schleier*, 115 S. Ct. 2159, 2167 (1995). The Court grants Defendant summary judgment on these limited relief requests.

## IV.   CONCLUSION

At bottom, the Court must decide whether a factfinder could reasonably find that age causally drove Fern's choice of Turner over Seaton. Here, "the record [does not] **conclusively** reveal[ ] some other nondiscriminatory reason for the employer's decision[.]" *Reeves*, 120 S. Ct. at 2109 (emphasis added). Nor has Seaton "created only a

weak issue of fact as to whether the employer's reason[s] w[ere] untrue" alongside "abundant and **uncontroverted** independent evidence that no discrimination had occurred." *Id.* At trial, Seaton will bear the burden of preponderantly *proving* a but-for discriminatory cause, but here he needed only to raise a genuine dispute on that issue. On review of the full record and under the Rule 56 framework, the Court concludes that there is sufficient proof for a reasonable trier of fact to find age discrimination. *See, e.g.*, *Wexler*, 317 F.3d at 578 ("In sum, this is a case that on its facts could go either way. . . . The conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment[.]"). Accordingly, the Court denies summary judgment on the ADEA claim.[20] For the reasons, to the extent, and on the terms stated, the Court **GRANTS IN PART** and **DENIES IN PART** DE 25.

This the 28th day of March, 2019.

Signed By:

*Robert E. Wier*

**United States District Judge**

---

[20] The Court does not rely on Fern's alleged cancellation, nearly two decades prior to the relevant period, of a Rural Utilities Director position after a preferred candidate was selected. The Court is skeptical of the allegation's relevance given the absence of any ageist component and the temporal distance from the 2009-10 events. *Cf. McGrath v. Lockheed Martin Corp.*, 48 F. App'x 543, 553 (6th Cir. 2002) (rejecting plaintiff's "attempt to demonstrate a conflict in the reasons given for his layoff" based, in part, on statements "temporally remote from the challenged . . . layoff decision."). In any event, the Court sees no reason, at this stage and given the result here, to conclusively determine the evidence's admissibility for trial purposes. The issue can wait.